UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**AC DIRECT, INC.,**

        **Plaintiff,**

-vs-                                          Case No. 6:06-cv-122-Orl-19UAM

**KEVIN R. KEMP,**

        **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Declaration of Herbert L. Allen (Doc. No. 52, filed Nov. 12, 2007); and

2. Plaintiff's Motion for Scheduling Conference or Alternatively, for an Order Setting Trial on the Issue of Damages (Doc. No. 57, filed Feb. 15, 2007).

## Background

Plaintiff A.C. Direct, Inc. filed a complaint against Defendants Mary Grieder and Kevin Kemp on January 31, 2006. (Doc. No. 1, filed Jan. 31, 2006.) Plaintiff amended its Complaint on June 15, 2006. (Doc. No. 21.) Grieder was later dismissed from the case. (Doc. No. 46., filed Aug. 10, 2007.)

The Clerk of Court entered a default against Kemp on October 30, 2006, and Plaintiff filed a Motion for Default Judgment against Kemp on August 10, 2007. (Doc. Nos. 42, 47.) Plaintiff's Motion requested a final default judgment for damages, costs and a permanent injunction. (Doc. No. 47 at 4-11.) In support of the request for damages, the motion referred to an affidavit that Plaintiff

purportedly attached.  (*Id.* at 6.)  However, Plaintiff did not actually attach the affidavit and failed to present any other evidence in support of its request for damages.  (*See id.*)

The Court issued a Final Permanent Injunction and Default Judgment on August 21, 2007.  (Doc. No. 48.)  The Order granted a permanent injunction in favor of Plaintiff, but no monetary damages were awarded. (*Id.*)  The judgment was final in all respects.  (*See id.*)

On September 4, 2007, Plaintiff filed a Motion for Attorney's Fees.  (Doc. No. 49.)  After reviewing the motion, the United States Magistrate Judge issued a Report and Recommendation that granted Plaintiff's request for attorney's fees and costs under the Copyright Act and directed Plaintiff to submit evidence so that the Court could determine a reasonable amount of fees and costs.  (Doc. No. 50, filed Oct. 2, 2007, at 3.)  Plaintiff did not produce any evidence of its attorney's fees and costs at that time.  On November 1, 2007, the Court adopted the Report and Recommendation and directed Plaintiff to file evidence of its fees and costs within ten days.  (Doc. No. 51.)  On November 12, 2007, Plaintiff submitted the Declaration of Herbert L. Allen outlining the claimed attorney's fees and costs.  (Doc. No. 52.)

On November 13, 2007, nearly three months after the final judgment was issued, Plaintiff filed a Motion for Clarification or Reconsideration seeking an award of damages against Kemp.  (Doc. No. 53.)  The Court denied Plaintiff's Motion for Reconsideration without prejudice, cited Federal Rule of Civil Procedure 60(b), and granted leave to file a new motion that stated a proper basis for the Court to reconsider its prior judgment.  (Doc. No. 54 at 3.)

Plaintiff then filed a new motion for reconsideration under Federal Rule of Civil Procedure 60(b)(1).  Plaintiff cited the "excusable neglect" standard of Rule 60(b)(1), as well as the Supreme Court's most recent interpretation of the rule, *Pioneer v. Investment Servs. Co. v. Brunswick Assocs.*

*Ltd.*, 507 U.S. 380, 393 (1992).  (Doc. No. 55, filed Nov. 26, 2007, at 2.)   However, Plaintiff went on to state that its counsel "mistakenly and inadvertently" failed to include evidence of damages in the motion for default judgment without any further explanation of how the mistake occurred.  (*Id.* at 3.)   On November 28, 2007, the Court denied Plaintiff's Motion because Plaintiff failed to demonstrate a proper basis for reconsideration.  (Doc. No. 56 at 3-4. )

Plaintiff now moves for a scheduling conference or order setting trial on the issue of damages, contending that the issues of damages and attorney's fees remain unresolved.  (Doc. No. 57 at 2-4.)

**Analysis**

**I.      Plaintiff's Motion for Scheduling Conference or Trial on the Issue of Damages**

   **A.      Finality of the Judgment**

Plaintiff argues that there has been no final judgment with respect to its claim for damages. (Doc. No. 57 at 2.)  This argument is incorrect.  Although the Court's Final Permanent Injunction and Default Judgment did not explicitly address damages, it was unambiguous and final in all respects.  (Doc. No. 48.)

No specific words are required for an order to constitute a final judgment as long as it is clear that the order is intended to constitute the final action in the case.  *United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 232-33 (1958); *Blanchard v. Commonwealth Oil Co.*, 294 F.2d 834, 837 (5th Cir. 1961).[1]   The Court's judgment made findings of fact, explicitly ordered that a "Final Judgment of Default [be] entered against Defendant Kevin Kemp," and directed the Clerk of Court

---

[1] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted the decisions of the United States Court of Appeals for the Fifth Circuit that were handed down prior to October 1, 1981 as binding precedent.

to close the case file. (Doc. No. 48 at 2.) The entry of the order concluded all substantive issues of the case with the Court simply "retain[ing] jurisdiction to enforce the terms of [the] Final Permanent Injunction." (*See id.*) Thus, the Order was unambiguously intended to be a final judgment.

### B. Availability of Damages in this Case

Because a final judgment was entered in this case, the Court is without jurisdiction to grant Plaintiff's motion for a scheduling conference or trial.[2] The proper mechanism for Plaintiff to pursue its claim for damages is to move for reconsideration of the Court's previous judgment under Rule 60(b), which Plaintiff has unsuccessfully attempted to do twice. (Doc. No. 54 at 3; Doc. No. 56 at 3-4.) However, in the interests of justice, the Court will again explain the proper method to seek reconsideration of a final judgment.

After a court enters a final default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), a party may seek reconsideration of the judgment by following the procedures of Federal Rule of Civil Procedure 60(b). Fed. R. Civ. P. 55(c). Rule 60(b)(1) allows a court correct a final judgment for "mistake, inadvertence, surprise, or excusable neglect." The decision to grant a motion for reconsideration is committed to the sound discretion of the Court and will not be overturned on appeal absent an abuse of discretion. *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir.1993), *cert. denied*, 541 U.S. 1040 (1994). "In order to reconsider a judgment, there must be a reason why the court should reconsider its prior decision, and the moving

---

[2] Plaintiff is correct that federal courts typically hold hearings to determine the proper amount of damages to be awarded in a default judgment. *See Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). The one exception to this rule applies when the claim for damages is based on a liquidated sum or requires only simple arithmetic. *Id.*; *see also HMG Prop. Investors, Inc. v. Parque Indus. Rio Canas, Inc.*, 847 F.2d 908, 914-15 (1st Cir. 1988). Because Plaintiff seeks compensatory damages for lost profits and emergency expenses, among other injuries, a hearing may be appropriate. However, this issue is not properly before the Court.

party must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision." *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994).

The "excusable neglect" provision of Rule 60(b)(1) applies when a party asks the Court to reconsider a final judgment based on the moving party's mistake. *Pioneer Inv. Serv. Co. v. Brunswick Assoc.*, 507 U.S. 380, 394 (1993) ("[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence."). The Court must take into account "all relevant circumstances surrounding the party's omission" when determining whether excusable neglect exists. *Id.* at 395. In doing so, a court should consider the following factors: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its impact on the proceedings; (3) the reason for the delay and whether it was within the movant's control; and (4) whether the movant acted in good faith. *Id.*

In certain circumstances, an attorney's mistake may present a basis for reconsideration under Rule 60(b)(1). *See SEC v. Simmons*, 241 Fed. Appx. 660, 663 (11th Cir. 2007) (denying relief based on an attorney's error because the moving party could not explain a delay in filing the motion for reconsideration); *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 849 (11th Cir. 1996) (granting relief where a miscommunication between attorneys resulted in the erroneous assumption that a demand for trial *de novo* had been filed); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981) (granting relief where an attorney withdrew mid-case and failed to inform his client); *Okehi v. Security Bank of Bibb County*, 199 F.R.D. 388, 393 (M.D. Ga. 2001) (granting relief where the same day filing of state and federal cases against the attorney's client caused the attorney to lose track of the federal case). Nevertheless, claims of excusable neglect based on attorney error are

rarely granted, and a party must demonstrate its own diligence in spite of the attorney's mistake. *Simmons*, 241 Fed. Appx. at 663-64. In particular, the party must be able to explain any delay in filing its motion for reconsideration under Rule 60(b)(1). *Id.*

Plaintiff has yet to produce evidence of excusable neglect. Plaintiff's last motion for reconsideration referenced parts of the standard for excusable neglect, but it never actually applied the standard to the facts of this case. (*See* Doc. No. 55 at 3-4.) Plaintiff merely stated that its counsel made an "inadvertent" mistake without any further explanation of the circumstances. Standing alone, this explanation is insufficient to establish excusable neglect. As the Court noted in its Order denying reconsideration, Plaintiff offered "no basis for its failure to include the evidence in the first instance" and gave "no explanation as to why it failed to realize its oversight until almost three months after the judgment was entered."[3] (Doc. No. 56 at 4.)

Should Plaintiff file a third motion for reconsideration, the following points must be addressed. First, Plaintiff must explain the circumstances surrounding its failure to submit the affidavit establishing damages. *See*, *e.g.*, *Cheney*, 71 F.3d at 849-50 (discussing circumstances where attorney errors constitute excusable neglect). Second, Plaintiff must explain the three month delay in filing its motion for reconsideration. *See*, *e.g.*, *Simmons*, 241 Fed. Appx. at 663-64 (denying a motion for reconsideration where the moving party "inexplicably waited over four months to file a motion to vacate"). Finally, Plaintiff should apply the *Pioneer* factors to the facts

---

[3] Notably, the affidavit submitted to the Court in support of Plaintiff's request for attorney's fees indicates that Gregory B. Allen "review[ed] [the] Court's entry of permanent injunction and final default judgment against Kemp" and held a telephone conference with Herbert L. Allen "in preparation for possible motion for reconsideration by the Court" on August 23, 2007. (Doc. No. 52 at 18.) Nevertheless, Plaintiff did not file the actual motion for reconsideration until November 13, 2007. (Doc. No. 53.)

of the case. *Pioneer*, 507 U.S. at 394. In doing so, it should explain, with detail, how each factor either weighs in favor of or militates against reconsideration under Rule 60(b)(1).

**II.     Attorney's Fees and Costs**

The Court granted Plaintiff's request for attorney's fees and directed Plaintiff to file evidence so that the Court could determine a reasonable amount of fees and costs to award. (Doc. Nos. 50, 51). On November 12, 2007, Plaintiff submitted the Declaration of Herbert L. Allen outlining Plaintiff's fees and costs. (Doc. No. 52.)

**A.     Attorney's Fees**

A party seeking attorney's fees has the burden of "establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988); *see Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (per curiam) ("The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate.") The moving party must supply the court with specific and detailed evidence from which it can determine the reasonable hourly rate; maintain records to show the time spent on the different claims; and set out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity. *Norman*, 836 F.2d at 1303.

Plaintiff's declaration specified billing rates at the following:

- Herbert L. Allen: $325.00/hour.
- Barbara R. Smith: $225.00/hour.
- Meaghan P. Hemmings: $185.00/hour.
- Gregory B. Allen: $190.00/hour.

- Holly Lyons (paralegal): $75.00/hour.

- Melissa Graziano (paralegal): $85.00/hour.

- Shelley Hotz (paralegal): $95.00/hour.

(Doc. No. 42 at 2-3.) Plaintiff has not introduced evidence establishing that these rates are reasonable in the community.[4] Nevertheless, in cases where the documentation is inadequate, the district court has the power to fashion an appropriate award based on its own experience and knowledge of what is reasonable and proper. *Loranger*, 10 F.3d at 781. In the Court's experience, the rates charged by the attorneys and paralegals assigned to this case are within the range of reasonable legal fees for the Orlando, Florida marketplace. Further, the fees are appropriate given the level of skill displayed in this case.[5]

---

[4]   As stated by the Eleventh Circuit:

> No two lawyers possess the same skills, and no lawyer always performs at the same level of skill. Accordingly, the parties ought to provide the court with a range of market rates for lawyers of different skill levels (perhaps as measured by quality and quantity of experience) involved in similar cases with similar clients, so that the court may interpolate the prevailing market rate based on an assessment of the skill demonstrated in the case at bar.

*Norman*, 836 F.2d at 1300. Plaintiff has not provided evidence of market rates or any other evidence establishing the reasonableness of the claimed attorney's fees.

[5]   Factors to be considered when setting a fee include: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) preclusion of other employment; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87 (1989). On balance, these factors weigh towards a finding of reasonableness. In particular, patent litigation is a specialized legal niche and generally supports billing rates slightly higher than what is customary for practitioners of other areas of law. *See, e.g.*, *Pierce v. Underwood*, 487 U.S. 552, 553-54 (1988)
(continued...)

After reviewing a ledger of counsel's billed and un-billed fees, the Court further finds that the hours attributed to this case are reasonable with one exception. Plaintiff submitted two facially inadequate motions for reconsideration and an incomplete declaration in support of attorney's fees and costs. The Eleventh Circuit requires district courts to adjust attorney's fees according to the "results obtained." *Norman*, 836 F.2d at 1302. Particularly, courts should "identify specific hours spent on unsuccessful claims." *Id.* Accordingly, the Court strikes (1) $969.00 in fees for time spent by Gregory B. Allen preparing the affidavit of Herbert L. Allen, and (2) $608.00 for time spent by Gregory B. Allen drafting the "motion for reconsideration of request of monetary judgment." (Doc. No. 52 at 18-20.)

Accordingly, Plaintiff is awarded $30,357.88 in attorney's fees.

**B.     Costs**

Unless a specific statute dictates otherwise, a prevailing party may only recover costs that are specifically authorized by 28 U.S.C. section 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 443 (1987). In this case, Plaintiff moves for costs pursuant 17 U.S.C. section 505. (Doc. No. 49 at 2.) The majority of courts interpreting this statute have determined that it only permits costs that are recoverable under section 1920. *Arclightz and Films Pvt. Ltd. v. Video Palace, Inc.*, 303 F. Supp. 2d 356, 365 (S.D.N.Y. 2003); *U.S. Media Corp, Inc. v. Edde Entertainment, Inc.*, No. 94 Civ.4849 (MHD), 1999 WL 498216, at * 7 (S.D.N.Y. July 14, 1999); *Brewer-Giorgio v.*

---

⁵(...continued)
(determining that patent lawyers possess "specialized skill" for purposes of a statute that fixed the amount of recoverable fees). Thus, the billing rate of $325/hour for Herbert L. Allen is reasonable based on his expertise and reputation in the community. The billing rates of the other attorneys assigned to the case are appropriately lower based on the level of skill displayed by the various motions that they were responsible for drafting. (Doc. No. 52 at 16-18.)

*Bergman*, 985 F. Supp. 1478, 1485 (N.D. Ga. 1997). *But see Jobete Music Co., Inc. v. Inn of Hammond, Inc.*, Civ. A. No. 91-2058, 1992 WL 69942, at *2 (E.D. La. Mar. 23, 1992).

Section 1920 authorizes the following costs:

1. Fees of the clerk and marshal;
2. Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
3. Fees and disbursements for printing and witnesses;
4. Fees for exemplification and copies of papers necessarily obtained for use in the case;
5. Docket fees under section 1923 of this title;
6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.  Plaintiff seeks $5,676.45 in costs for the following items: filing fees for arbitration, meals, faxes, investigative services, Federal Express charges, copying costs, Lexis online research, process server fees, witness fees, "online research," an unspecified "disbursement," and the costs of a subpoena.  (Doc. No. 52 at 22.)

The declaration submitted in support of costs is merely an itemization of expenses with no explanation of how or why the expenses were incurred.  For example, Plaintiff has not attributed the copying costs to any particular "papers necessarily obtained for use in the case."  *See* 28 U.S.C. § 1920.  Regarding witness fees, no hearing or trial has ever been held in this case, casting great suspicion on the general accuracy the declaration.  Because of these ambiguities, the Court cannot determine whether any of the claimed costs fall within the scope of section 1920 and are authorized.

Accordingly, no costs may be awarded to Plaintiff on its incomplete application.

**Conclusion**

Based on the foregoing, the Court:

1. **DENIES** Plaintiff's Motion for a Scheduling Conference or Trial (Doc. No. 57) and grants leave to Plaintiff to file a renewed motion for reconsideration under Federal Rule of Procedure 60(b)(1).

2. **AWARDS** attorney's fees in the amount of $30,357.88. Defendant Kevin R. Kemp is ordered to pay Plaintiff A.C. Direct $30,357.88 in attorney's fees.

3. **DENIES** the request to award costs.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 18, 2008.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Unrepresented Party